# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **JOHN A. PERRY, Jr.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 05 C 6863** |
| | ) | |
| **v.** | ) | **Magistrate Judge Morton Denlow** |
| | ) | |
| **JO ANNE B. BARNHART,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This case comes before this Court on Plaintiff's motion for summary judgment or remand and Defendant's motion for summary judgment. Plaintiff, John A. Perry, Jr. ("Plaintiff" or "Claimant"), challenges the decision of Defendant Jo Anne B. Barnhart, Commissioner of Social Security ("Defendant" or "Commissioner"), claiming that her denial of Plaintiff's request for Disability Insurance Benefits ("DIB") should be reversed or remanded because the Administrative Law Judge: (1) ignored important lines of evidence supporting Claimant's claim, (2) erred in finding Claimant capable of performing his past relevant work as a warehouse worker when he never performed this work, and (3) made an improper credibility finding that ignores SSR 96-7p and 20 C.F.R. § 404.1529. For the reasons stated below, this Court grants Claimant's motion for summary judgment or remand and denies the Commissioner's motion for summary judgment.

# I.  BACKGROUND FACTS

## A.    PROCEDURAL HISTORY

Claimant filed an application for DIB on April 3, 2003, alleging a disability since July 30, 2001, due to major depression and a bipolar condition.  R. 33-34, 38.  The application was denied initially, R. 35-38, and again upon reconsideration.  R. 41-44.  On January 18, 2005, Administrative Law Judge John Mondi ("ALJ") held a hearing on the question of disability.  R. 252-85.  Claimant, who was represented by counsel, testified at the hearing.  R. 257-78.  Mr. James Breen, a vocational expert, also testified.  R. 279-84.

On February 23, 2005, the ALJ issued his decision, and determined that Claimant was not disabled.  R. 14-22.  On October 19, 2005, the Appeals Council denied Claimant's request for review.  R. 4-6.

Claimant now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  The parties have consented to this Court's jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c)(1).  The Court conducted an oral argument on June 21, 2006.

## B.    HEARING TESTIMONY - JANUARY 18, 2005

### 1.    Claimant's Testimony

Claimant is divorced with no children.  R. 258.  He graduated from high school and completed one year of college.  *Id.*  At the time of the hearing he was 48 years old, R. 258, and weighed 218 pounds.  R. 265.  Claimant lives in an apartment building with a roommate and he is able to drive and take care of himself.  R. 267.  His hobbies include golf and reading.  R. 269.  He has problems concentrating when he reads.  R. 274.  Although he can

walk for two miles and lift up to 50 pounds for a short period of time, he experiences disorientation at times when walking. R. 265. Claimant described this disorientation as "dizziness" and speculated that it was a side effect of his prescription medications. R. 274.

Claimant has problems sleeping and has also experienced loss of appetite which resulted in substantial weight loss. R. 265-66. Furthermore, Claimant scratches himself in his sleep due to anxiety and has done so for "quite a long time." R. 276.

Since high school, Claimant has had problems with drugs and alcohol. R. 264-65. Specifically, his drug of choice was marijuana and he occasionally used cocaine. R. 265. Since Claimant became aware that he suffered from Hepatitis C in 1998 however, he has not used drugs or alcohol. R. 264-65.

Since the age of 18 he has dealt with depression, feelings that his identity was lacking or deficient, and he never received the sense of positive self-image for which he longed. R. 271-72. He has also suffered from recurring impulse control issues, including domestic disputes with his ex-wife that resulted in battery charges. R. 272. In 2000, Claimant and his wife divorced and this loss had a profoundly negative effect on both his mental health and ability to control his impulsive behavior. R. 259-61. Since the divorce, Claimant has had thoughts of doing harm to himself and others, although not regularly, which he acted out once. R. 275-76.

Claimant testified that, while he likes people generally and tries to get along with them, something somehow seems to happen to cause outbursts at work that result in his termination. R. 272. However, Claimant also testified that he has other interpersonal relationships in which he has never had impulse control issues. R. 273. Claimant underwent neuropsychological testing in 2001 to determine the root of his impulsive behavior, which revealed damage to the frontal lobe of his brain as the result of a car accident in 1972. R. 269-70. This brain damage has necessitated his ongoing psychiatric treatment for over 20 years, most recently at the DuPage County Health Department ("Health Department"). R. 271. When asked whether things were stable, better, or worse, Claimant responded that things were "okay." R. 269.

Regarding his employment history, Claimant graduated from barber school in 1981 and he worked in that field for eight to ten years. R. 278. He also worked at Federal Express ("FedEx") from 1989 to 1998, where his duties included handling, checking, sorting, and driving. R. 263. This job ended due to Claimant's Hepatitis C of the liver, thyroid cancer, and gall bladder and scrotum surgeries. R. 263-64.

Directly following his divorce in 2000, Claimant started working for AT&T in digital phone sales. R. 261-62. This job lasted approximately two years until he engaged in a verbal altercation with a caller. R. 260-61. He attributed the altercation to the mental toll of the divorce. R. 260-61.

Claimant's most recent employment was with Jay's Foods delivering its products to

stores.  R. 258-59.  This job entailed some light lifting (30 pounds or less) and lasted approximately seven months.  R. 259.  Again, he was terminated for inappropriate behavior. *Id.*  Claimant also attributed this outburst to the mental toll of the divorce.  R. 259, 261. Immediately following this termination, Claimant sought two years of counseling.  R. 259. Claimant stated that if he was cautious, he believed he could perform the jobs with FedEx and AT&T.  R. 274-75.  On the other hand, he testified that his psychiatrist told him it would be unwise to work due to his depression, lack of concentration, and impulsive behavior.  R. 275.

### 2.      James Breen - Vocational Expert ("VE")

James Breen, a VE, also testified at the hearing about Claimant's past relevant work in terms of skill levels and whether any of those jobs could be performed by hypothetical individuals with various mental residual functional capacities.  R. 279-84.  Regarding Claimant's past relevant work, the VE stated that Claimant has worked as a warehouse worker which is unskilled, and as a route driver, telephone services sales representative, and barber, all of which are semi-skilled.  R. 279.

The VE was then asked to consider various hypothetical questions.  In the first hypothetical, the VE was instructed to rely upon the mental residual functioning capacity ("MRFC") prepared by Carl A. Hermsmeyer, Ph. D.,  that reflects moderate limitations in the ability to understand, remember, and carry out detailed instructions. R. 210-13, 280.  The VE responded that of Claimant's past work, such an individual could only perform his past work as a warehouse worker, and that such an individual could not return to any employment

above the unskilled work group due to limitations in the ability to carry out detailed instructions. *Id.*

In the second hypothetical, the VE was asked to rely upon two MRFCs prepared by Donald Cochran, Ph.D., and Dr. Dennis Gelyana, a psychiatrist, and to consider an individual with moderate limitations in the ability to carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, and interact appropriately with the general public. R. 170-73, 280-81. The individual also has serious limitations in the ability to sustain an ordinary routine without special supervision and work in coordination with or proximity to others without being unduly distracted. R. 282. The VE was asked to further assume the individual would have serious limitations in the ability to complete a normal workday or workweek without interruptions from psychologically based symptoms, including a probability that he would miss more than four days of work per month, and get along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes. 214-19. The VE responded that an individual with the limitations contained in either the Cochran or Gelyana MRFCs would be unemployable. R. 282.

The VE was also instructed to fully credit all of Claimant's testimony and accept the same as an accurate depiction of the hypothetical individual's capabilities and limitations. R. 282-83. The VE stated that he would find such a person unemployable because of his impulse control behaviors, which have previously resulted in losing employment, and his impaired ability to concentrate and process information. R. 283. Finally, the VE testified

that if a person is going to be consistently late to work he would be unemployable.  R. 284.

## C.    MEDICAL EVIDENCE

### 1.    Dr. Emad Amer - First visit to DuPage County Health Department Mental Health Division

On July 10, 2001, Dr. Emad Amer ("Dr. Amer") performed a comprehensive assessment and psychiatric evaluation of Claimant.  R. 241-51.   In the preliminary assessment, Dr. Amer found that Claimant had problems with anger, nightmares, concentration, impulsively aggressive behavior although not during the interview, and homicidal ideation which he did not have at that time.  R. 241.  Dr. Amer traced Claimant's history with mental illness.  His first hospitalization was in 1981 at Alexian Brothers for a depressive episode.  R. 243.  Since that time, Claimant has received outpatient therapy and psychiatry from numerous service providers, including the Health Department and Central DuPage Hospital.  *Id.*  Two years earlier when Claimant moved back home due to marital problems, he began receiving outpatient treatment at the Kenneth Young Center.  *Id.*  His most recent hospitalization was  at Alexian Brothers one year earlier.  *Id.*  Claimant has also been diagnosed with bipolar disorder.  *Id.*

Dr. Amer diagnosed Claimant with Mood Disorder (Not Otherwise Specified) ("NOS"), Impulse control disorder (NOS), history of head injury, hepatitis C, and hypothyroid disorder.  R. 248.  Dr. Amer made initial treatment recommendations in several areas.  Regarding Claimant's psychiatric need, he recommended prescription of psychotropic mediation, evaluation of target symptom response to prescribed medication, and ongoing

psychiatric evaluations of symptom relief and medication continuation. *Id.* He also recommended a number of treatments related to Claimant's self-development. *Id.*

### 2. Dr. Laura Daniell - DuPage County Health Department Staff Psychiatrist - July 2002 through July 2003

Dr. Laura Daniell ("Dr. Daniell"), a psychiatrist, first saw Claimant on July 30, 2002, and treated him until July 15, 2003. At their initial visit, Dr. Daniell assessed Claimant with mood disorder (NOS), impulse control disorder (NOS), history of head injury, status post thyroid surgery, and hyperthyroidism. R. 185. She directed Claimant to continue taking Clonazepam (1 mg daily) and Neurontin (600mg daily), and increased his dosage of Paxil CR to 25mg. *Id.* On November 19, 2002, she assessed Claimant's major depressive disorder in remission, stating that he had been improving and was stable. R. 180. On January 7, 2003, she assessed his impulse control disorder in remission despite increasing his Klonopin dosage to 1mg, with Claimant reporting that he felt optimistic and had been sleeping and eating well. R. 179.

On February 18, 2003, however, Dr. Daniell assessed Claimant's major depressive disorder in only partial remission and increased his dosage of Paxil. R. 178. Although by April 23, 2003 Dr. Daniell had again assessed Claimant's major depressive disorder in remission, she changed the diagnosis of his impulse control disorder to intermittent explosive disorder and assessed it as in only partial remission. R. 176. Over the next few months Dr. Daniell assessed Claimant's major depressive disorder in remission and stable, with him feeling positive and moving forward with his life, and failed to further reference his

intermittent explosive disorder.  *Id.* at 174-75.

### 3.     Gail Ihnen, Ph. D. - DuPage County Health Department Group Counselor - May 2003 through July 2003

On May 13, 2003, Gail Ihnen, Ph. D. ("Dr. Ihnen"), a group counselor, began treating Claimant.  R. 195.  At their initial meeting, as well as the following three, Dr. Ihnen facilitated group activities with Claimant and generally  assessed him as psychiatrically stable.  R. 190-94.  On July 3, 2003 Dr. Ihnen spoke with Claimant by telephone and Claimant reported depression as 7 of 10 (10 being severe) and tiredness.  R. 191.  However, he simultaneously related that things were looking up for him because he was closing on two buildings to use as rental properties.  *Id.*  During their most recent session, Dr. Ihnen addressed Claimant's limited attendance and the negative effect this was having on development of relationships and group inclusion.  R. 190.  Dr. Ihnen reported that Claimant was defensive although he appeared able to understand some of the issues.  *Id.*

### 4.     Donald Cochran, Ph.D. - Reviewing Psychologist, DDS - MRFC Assessment May 30, 2003

On May 30, 2003 Donald Cochran, Ph. D. ("Dr. Cochran") reviewed certain portions of Claimant's file at the request of the Social Security Adminstration.  R. 156-72.  He diagnosed Claimant with disturbance of mood as evidenced by bipolar syndrome manifested by the full symptomatic picture of both manic and depressive syndromes.  R. 159.

Additionally, Dr. Cochran determined that Claimant was moderately limited in his ability to carry out detailed instructions and maintain concentration for extended periods.  R. 170.  He further found Claimant moderately limited in his ability to perform activities within

a schedule, maintain regular attendance, be punctual within customary tolerances, and interact appropriately with the general public. R. 170-71. Dr. Cochran determined that Claimant was stable with medication and capable of performing simple routine tasks. R. 172.

### 5. Carl Hernsmeyer, Ph.D. - DDS Reviewing Psychologist - MRFC Assessment - September 8, 2003

On September 8, 2003 Carl Hernsmeyer, Ph. D. ("Dr. Hernsmeyer") reviewed certain portions of Claimant's file at the request of the Social Security Administration. R. 196-212. He diagnosed Claimant with major depressive disorder in remission. R. 199. He further determined that Claimant was moderately limited in his ability to understand, remember, and carry out detailed instructions, R. 210, but he has the mental capacity to perform simple tasks. R. 212.

### 6. Dr. Naveen Maddineni - DuPage County Health Department Staff Psychiatrist - December 2003 through July 2004

Dr. Naveen Maddineni ("Dr. Maddineni") began seeing Claimant on December 9, 2003. R. 239. Starting with this first visit, Dr. Maddineni consistently reported Claimant's mood as euthymic with "fair" insight and judgment. R. 232-38. Dr. Maddineni's impression of Claimant's major depressive disorder was that it was recurrent and in remission and he increased his dosage of Paxil. *Id.* Claimant subsequently reported that the increased dosage made him shaky and jittery and Dr. Maddineni reduced it with Claimant reporting that he was stable. R. 238. He also assessed Claimant's major depressive disorder in full remission. *Id.* During his next two visits Claimant primarily focused on God and religious issues, stated that he had been compliant with his medications, and denied psychotic symptoms. R.

10

234-35. On June 2, 2004, Claimant reported being stable in terms of his mood symptoms since his last appointment over one month earlier. R. 232. However, he also reported having had two angry outbursts with his girlfriend while compliant with all medication. *Id.*

In his six month review on July 10, 2004, Dr. Maddineni assessed Claimant's major depressive disorder in only partial remission. R. 231. Dr. Maddineni stated that Claimant had generally been able to manage anger notwithstanding a couple of outbursts, and noted that Claimant experienced increased irritability and anger when he had been without his medication for a day. *Id.* Dr. Maddineni further stated that Claimant had limited progression in terms of furthering his understanding of triggers for exacerbation of symptomology. *Id.*

### 7. Dr. Dennis Gelyana - DuPage County Health Department Staff Psychiatrist - August 2004 through November 2004

Claimant first visited Dr. Dennis Gelyana, a psychiatrist, on August 31, 2004. R. 226. During this visit, Claimant reported doing "fairly well." *Id.* Dr. Gelyana diagnosed him with major depressive disorder in partial remission and prescribed Paxil and Klonopin for his difficulty sleeping. *Id.*

During their next visit on September 29, 2004, Claimant revealed that he scratches himself in his sleep and further reported that he was compliant with his Paxil and Neurontin, without side effects, while admitting to having not taking Klonopin in the past month. R. 224. Dr. Gelyana assessed Claimant's major depressive disorder in partial remission and increased his bedtime dosage of Neurontin to 900mg to ameliorate his scratching himself in his sleep. *Id.* Claimant failed to show up for his next two scheduled appointments. *Id.*

### 8. Dr. Gelyana - MRFC Assessment - December 2004

On December 22, 2004, Dr. Gelyana reviewed Claimant's file starting with his first visit to the Health Center in July of 2001 and assessed Claimant's MRFC. R. 215-19. Dr. Gelyana determined that Claimant was seriously limited in his ability to do certain things. R. 217-18. Among these were Claimant's ability to sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being unduly distracted, and get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes. R. 217.

Dr. Gelyana also assessed Claimant as having serious limitations in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, and maintain socially appropriate behavior. R. 217-18. He explained that Claimant has a low to low-average IQ, complains of headaches, and that he anticipated the combination of Claimant's impairments to cause him to miss more than four days of work per month for at least the next 12 months. R. 218-19. Finally, Dr. Gelyana found that Claimant had impaired concentration, which would cause him difficulty in paying attention

to several tasks at the same time, in addition to mood symptoms which would interfere with his productivity.  R. 219.

**D.     THE ALJ'S DECISION - FEBRUARY 23, 2005**

After conducting the hearings and reviewing the evidence, the ALJ found that Claimant was not disabled within the meaning of the Social Security Act.  R. 17.  While the ALJ determined that Claimant had severe impairments, he also found that Claimant had the MRFC to perform past warehouse work.  R. 21.

The ALJ assessed Claimant's application for DIB under the five-step sequential analysis.  *See infra*, Part II B (describing the disability standard of review).  Under step one of the disability analysis, the ALJ found insufficient evidence to resolve the issue of whether Claimant was engaged in substantial gainful activity.  R. 18-19.

Under the second step, the ALJ determined that the combination of Claimant's history of hepatitis C, hypothyroidism, a hernia, head trauma, DAA, and depression were severe impairments.  R. 19.  At step three, however, the ALJ found that Claimant's severe impairments did not meet or equal a listed impairment under the Social Security regulations. *Id.*

At step four, the ALJ determined Claimant's MRFC.  The ALJ first set forth the litany of impairments from which Claimant has suffered.[1]  He then described Claimant's record of

---

[1] "The Claimant has a history of severe hepatitis C, hypothyroidism, a hernia, head trauma, and depression.  He underwent psychiatric evaluation at DuPage County Health Department Mental Health Division on July 10, 2001 for anger, nightmares with inability to concentrate and homicidal ideation . . . The examination resulted in a diagnosis of mood disorder

psychiatric treatment by Drs. Daniell, Maddineni, and Gelyana, painting a picture of an individual whose depressive and impulse control disorders go into remission when medication is taken as prescribed. R. 19-20. The ALJ contrasted this picture with Dr. Gelyana's more recent opinion that Claimant was disabled, which he accorded reduced weight under SSR 96-2p, finding it not well-supported and at variance with the assessments of Dr. Daniell and Dr. Maddineni. R. 20.

Next, the ALJ adopted the opinion of Dr. Hermsmeyer, the DDS psychologist, which found Claimant's impairments result in only moderate limitations in understanding, remembering, and carrying out detailed instructions, since it was consistent with the medical and other evidence. *Id.* He stated that "[C]laimant's . . . testimony of pain, other symptoms and functional limitations was considered but when compared against the objective evidence and evaluated using factors in SSR 96-7p, was not credible." *Id.*

The ALJ then determined whether Claimant could perform any past relevant work ("PRW"). After defining PRW, the ALJ accepted the testimony of the VE that Claimant's PRW included work as a warehouseman, route driver, barber, and telemarketing sales person. *Id.* Finally, the ALJ noted that the VE testified that if an individual had the education, age, and work experience of Claimant, as well as the MRFC assessed by Dr. Hermsmeyer, that person could do past warehouse work. R. 20-21. Therefore, the ALJ concluded that

---

(NOS) and impulse control disorder (NOS) with history of impulsively aggressive behavior on the job and with wife, and GAF scores of 50 currently and 65 as the highest in the past year." R. 19.

Claimant can perform PRW and thus is not disabled.  R. 21.

## II.  LEGAL STANDARDS

### A.    STANDARD OF REVIEW

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  A decision by an administrative law judge, ("ALJ"), becomes the Commissioner's final decision if the Appeals Council denies a request for review.  *Wolfe v. Shalala,* 997 F.2d 321, 322 (7th Cir. 1993)**.** Under such circumstances, the decision reviewed by the district court is the decision of the ALJ.  *Eads v. Sec'y of the Dep't of Health & Human Servs.*, 983 F.2d 815, 816 (7th Cir. 1993).  Judicial review is limited to determining whether the ALJ applied the correct legal standards in reaching his decision and whether there is substantial evidence in the record to support the findings.  *Lopez v. Barnhart,* 336 F.3d 535, 539 (7th Cir. 2003).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales,* 402 U.S. 389, 401 (1971).  A mere scintilla of evidence is not enough.  *Diaz v. Chater,* 55 F.3d 300, 306 (7th Cir. 1995).    Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if "the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."  *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996).

If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

While a reviewing court must conduct a "critical review" of the evidence before affirming the Commissioner's decision, *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000), it may not re-evaluate the facts, re-weigh the evidence, or substitute its own judgment for that of the Social Security Administration. *Diaz,* 55 F.3d at 305-06. Thus, judicial review is limited to determining whether the ALJ applied the correct legal standards in reaching a decision and whether there is substantial evidence to support the findings. *Scivally v. Sullivan,* 966 F.2d 1070, 1075 (7th Cir. 1991)**.** The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

## B.    DISABILITY STANDARD

Disability insurance benefits, ("DIB"), are available to claimants who can establish "disability" under the terms of Title II of the Social Security Act, ("Title II"). *Brewer v. Charter*, 103 F.3d 1384, 1390 (7th Cir. 1997). An individual is "disabled" if that individual has the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). However, a disabled individual is eligible for DIB only if that individual is under a disability. 42 U.S.C. §§ 423(a); 1382c(a). An individual is under a disability if he is unable to do his previous work and cannot, considering his age, education, and work experience, partake in

any gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To make this determination, the Commissioner must employ a five step sequential analysis. 20 C.F.R. §§ 404.1520(a)-(f); 416.920(a)-(f). If the ALJ finds at any step of this process that a claimant is not disabled, the inquiry ends. *Ismahel v. Barnhart,* 212 F. Supp. 2d 865, 872 (N.D. Ill. 2002). The process is sequential; if the ALJ finds that the claimant is not disabled at any step in the process, the analysis ends. Under this process, the ALJ must inquire: (1) whether the claimant is still working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) if the claimant does not suffer from a listed impairment, whether he can perform past relevant work; and (5) whether the claimant is capable of performing any work in the national economy. *Id.*

## III. DISCUSSION

Claimant raises three principle issues for review: (1) whether the ALJ ignored important lines of evidence supporting Claimant's claim, (2) whether the ALJ erred in finding Claimant's past relevant work to be a warehouse worker, and (3) whether the ALJ made an improper credibility finding that ignores SSR 96-7p and 20 C.F.R. § 404.1529.

**A.    THE ALJ FAILED TO PROPERLY ARTICULATE HIS REJECTION OF CERTAIN EVIDENCE SUPPORTING CLAIMANT'S CLAIM**

Claimant argues that the ALJ erroneously gave Dr. Hernsmeyer's MRFC controlling weight, ignored important lines of evidence, and erroneously failed to recontact Dr. Gelyana to resolve discrepancies between his treatment notes and assessment of Claimant's MRFC. Because this Court finds that the ALJ's failure to address Dr. Cochran's assessment of Claimant's MRFC in his decision constitutes reversible error, it does not reach Claimant's arguments that the ALJ erroneously gave Dr. Hernsmeyer's MRFC controlling weight and failed to recontact Dr. Gelyana to resolve purported discrepancies between his treatment notes and assessment of Claimant's MRFC.

Claimant argues that the ALJ improperly dismissed certain evidence that was favorable to Claimant without proper explanation. The gravamen of this argument is that the ALJ's opinion mentioned neither Dr. Cochran's assessment of Claimant's MRFC, which reflected greater limitations than those found by Dr. Hernsmeyer, nor gave controlling weight to Dr. Gelyana's MRFC which revealed that Plaintiff has a major depressive disorder, impulse control disorder, a GAF of 55 and serious limitations in being able to sustain work without supervision, work with others, maintain socially appropriate behavior or complete a normal workday.  R. 217-18.

"The ALJ's opinion is important not in its own right but because it tells us whether the ALJ has considered all the evidence, as the statute requires him to do." *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003) (quoting *Stephens v. Heckler*, 766

18

F.2d 284, 287 (7th Cir. 1985)).  Although the ALJ need not discuss every piece of evidence in the record supporting Claimant's case, the ALJ may not ignore an entire line of evidence that is contrary to the ruling.  *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003). Indeed, "'when the ALJ fails to mention rejected evidence,' the court must send the case back, for it cannot tell whether the ALJ fulfilled his statutory duty."  *Stephens*, 766 F.2d at 287 (quoting *Zblewski v. Schweiker*, 732 F.2d 75, 79 (7th Cir. 1984)).  However, the ALJ need only minimally articulate his justification for rejecting or accepting specific evidence and need not provide a written evaluation of every piece of evidence.  *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004).  Thus, "[i]f a sketchy opinion assures us that the ALJ considered the important evidence, and the opinion enables us to trace the path of the ALJ's reasoning, the ALJ has done enough."  *Stephens*, 766 F.2d at 287.

By way of illustration, in *Zblewski* there was substantial evidence that, if accepted as true, would necessitate a finding that claimant was disabled.  732 F.2d at 77-78.  Without explicitly rejecting this line of evidence in the decision, the ALJ determined that the claimant was not disabled.  *Id.* at 78.  On appeal, the Seventh Circuit held that an ALJ must articulate his reasons for crediting or rejecting particular sources of evidence.  *Id.* at 79.  It first noted that the Supreme Court has "held that the evidence supporting the agency's decision must be substantial 'when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to the [agency's] view.'"  *Id.* at 78 (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)).  Pursuant to this precedent, the Seventh Circuit determined that an ALJ's articulation of reasons for crediting or rejecting particular sources

of evidence is absolutely essential for meaningful appellate review, reasoning that "when the ALJ fails to mention rejected evidence, 'the reviewing court cannot tell if significant probative evidence was not credited or simply ignored,'" *id.* at 79 (quoting *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)), and thus, whether the ALJ's decision was in fact supported by substantial evidence. *Id.* at 78-79.

The record contains assessments of Claimant's MRFC by Dr. Cochran, Dr. Hernsmeyer, and Dr. Gelyana. Notably, the Social Security Administration requested the MRFC assessments by Dr. Cochran and Dr. Hernsmeyer, and Dr. Cochran's assessment indicated significantly greater limitations than the assessment ultimately adopted. In his decision, the ALJ clearly rejected the MRFC completed by Dr. Gelyana. However, the ALJ's decision is completely void of any reference to Dr. Cochran's MRFC, and this omission is similar to the omission in *Zblewski*.

The ALJ in this case, like in *Zblewski*, heard evidence that would necessitate a finding of disability if accepted. Indeed, at Claimant's hearing the VE was asked whether a hypothetical individual of Claimant's education, age, and lack of physical impairments, in addition to his MRFC as assessed by Dr. Cochran, would be employable. R. 280-81. The VE replied that, assuming the moderate limitations in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances meant he would miss more than three days of work in a month, such an individual would be

unemployable.  R. 281.  As was the case in *Zblewski*, this Court cannot tell whether this significant probative evidence was not credited or simply ignored.

This proves especially significant in this case because the record indicates that in the interim between Dr. Cochran's MRFC and Dr. Hernsmeyer's MRFC, Claimant's condition may have regressed.  R. 191.  Without clarification on the consideration of and weight accorded Dr. Cochran's assessment of Claimant's MRFC, the record is inadequate to make a determination of disability.  Therefore, this omission constitutes reversible error.

**B.    THE ALJ FAILED TO PROPERLY ASCERTAIN THE SPECIFIC JOB DUTIES OF CLAIMANT'S PAST WORK**

Claimant also contends that the ALJ  wrongly found him capable of performing his past relevant work as a warehouse worker when he never performed this work.  Claimant specifically takes issue with the fact that the ALJ failed to elicit any testimony as to the physical and mental demands of his PRW, particularly the work performed for FedEx. Plaintiff never stated he worked as a warehouse worker: he testified to truck driving, a FedEx route driving job that required handling, checking, sorting, and delivering packages, and digital phone sales.  R. 256-63.  The forms he completed prior to the hearing indicate truck driving, shipping for FedEx and digital sales as his only jobs.  R. 83, 92-3, 99-103.

At the hearing, the VE testified that Claimant's PRW included work as a warehouse worker, route driver, telephone services sales person, and a barber.  R. 279.  He specified that the warehouse work was unskilled, and all of Claimant's other PRW was semi-skilled.  R. 279-80.  In response to a series hypothetical questions the VE stated that, at most, Claimant

could perform only unskilled work. R. 280-83. Notably, the VE did not discuss any of the duties associated with Claimant's PRW or the duties of equivalent jobs found in the DOT.

SSR 82-61 sets forth two accepted tests for determining whether a claimant retains the capacity to perform PRW: (1) the particular functional demands and job duties peculiar to an individual job as they actually performed it, or (2) the functional demands and job duties of the job as ordinarily required by employers throughout the national economy using the Dictionary of Occupational Titles ("DOT"). SSR 82-62 presents a comprehensive discussion of appropriate procedures for making such a determination. In pertinent part, it states that "[p]ast work experience must be considered carefully to assure that the available facts support a conclusion regarding the claimant's ability or inability to perform the functional activities required in this work." SSR 82-62.

The same program policy statement emphasizes that "[t]he decision as to whether the claimant retains the functional capacity to perform past work . . . must be developed and explained fully in the disability decision. . . . [And] every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit." *Id.* Additionally, "the ALJ must ascertain the specific job duties of past work in some detail, most likely through questioning the claimant, vocational expert, or referencing the DOT . . . . [and a]bove and beyond this, the ALJ should also reference the specific duties in his or her determination opinion, so as to build a logical bridge to his or her ultimate conclusion." *Page v. Barnhart*, No. 03 C 50484, slip op. at 32-33 (N.D. Ill. Dec. 6, 2004) (citing *Nolen v. Sullivan*, 939 F.2d 516, 519 (7th Cir. 1991)).

In *Page*, a VE testified that the claimant could perform light, unskilled work and thus, could perform some to most of the hand-packing jobs in the region and her mail clerk position. No. 03 C 50484, slip op. at 33. During the ALJ's questioning, the VE did not cite the DOT or discuss the job duties of hand-packing. *Id.* Therefore, the district court remanded the case for further proceedings, reasoning that "[t]he ALJ's entire discussion of Plaintiff's past work in her opinion was the adoption of [the VE's] statement that the requirements of the mail clerk and hand packing jobs were consistent with . . . Plaintiff's [M]RFC." *Id.* at 34. It further noted that "[t]he ALJ never stated what a mail clerk or hand packer does, so it is unclear if the ALJ made the individualized comparison of Plaintiff's past relevant work and her exertional and non-exertional capabilities as is required in the Seventh Circuit," and moreover, that "a review of the record . . . reveal[ed] facts contrary to the ALJ's decision that Plaintiff can return to her past relevant work." *Id.*

As in *Page*, the ALJ's decision merely cites the VE's testimony that Claimant performed certain work and that such work was consistent with his skill levels as determined by the ALJ. Specifically, it states that "[C]laimant has past relevant work as warehouseman . . . [which the VE] characterized [as] unskilled . . . work," and that "[i]n response to a series of questions involving a hypothetical individual with claimant's work experience, high school education, and younger age[,] . . . the [VE] testified that if the person had the [MRFC which has been accepted as that of Claimant] the person could do past warehouse work." R. 20-21. Thus, like the discussion in *Page* merely adopting the VE's statement that the requirements of claimant's PRW were consistent with her MRFC, the discussion in the

23

instant case proves deficient.

Moreover, it is impossible to ascertain from the ALJ's decision, or even the case record in its entirety, what warehouse work Claimant performed at FedEx. Indeed, the only two pieces of evidence found in the case record regarding Claimant's duties at FedEx read "Pallets forklifted on truck," R. 100, and "I was a handler. I was a courier. I was a checker/sorter. I was a truck driver there . . ." R. 263. Such a lack of evidence as to the particular functional demands and job duties of Claimant's PRW, and the duties of such work as ordinarily required by employers throughout the national economy, simply does not comport with the mandate of SSR 82-61.

As a result, this Court is unable to determine whether Claimant's "past work experience [was] considered carefully," SSR 82-62, and consequently, whether "the ALJ made the individualized comparison of Plaintiff's past relevant work and [his current] capabilities as is required in the Seventh Circuit." *Page*, No. 03 C 50484, slip op. at 34. Because the ALJ failed to build a logical bridge to his conclusion, this Court is unable to determine whether there is substantial evidence in the record to support the ALJ's determination that Claimant can perform PRW as a warehouseman.

## IV. CONCLUSION

In sum, this Court finds that the ALJ's failure to address Dr. Cochran's MRFC in his decision and ascertain Claimant's specific duties at FedEx both constitute reversible error. In so finding, and as set forth *supra*, this Court finds it unnecessary to reach Claimant's arguments that the ALJ erroneously gave Dr. Hermsmeyer's MRFC controlling weight, that the ALJ failed to recontact Dr. Gelyana to resolve purported discrepancies between his treatment notes and MRFC, and that the ALJ made an improper credibility determination regarding Claimant's testimony.

**For the reasons set forth in this opinion, Plaintiff's motion for summary judgment or remand is granted, the Commissioner's motion for summary judgment is denied, and the matter is remanded to the ALJ for further consideration.**

**SO ORDERED THIS 30th DAY OF JUNE, 2006.**

_____
**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**

**Copies mailed to:**
Frederick J. Daley, Jr.
DALEY, DEBOFSKY & BRYANT
One N. LaSalle Street, Suite 3800
Chicago, IL 60602

Counsel for Plaintiff

Donald R. Lorenzen
ASSISTANT UNITED STATES
ATTORNEY
219 South Dearborn Street, 5th Floor
Chicago, IL 60604

John Jay Lee
Assistant Regional Counsel
200 West Adams Street, Suite 3000
Chicago, IL 60606

Counsel for Defendant